You may proceed. Good morning, and may it please the Court, Kyle Freeney on behalf of Appellant Venequip, S.A. The District Court in this case committed legal error in its application of three of the four intel factors to deny Venequip's rather textbook request for evidence that's located in the United States in possession of third-party Caterpillar, Inc. Principal among these errors was its conclusion that Venequip's application concealed an attempt to circumvent Swiss proof-gathering restrictions, even though the District Court identified no particular Swiss restriction that would preclude or prevent or prohibit a party from pursuing evidence through the mechanism of 1782 in connection with a Swiss proceeding. Before you get too deep into the merits, would you address the question of mootness? Absolutely, Your Honor. This case is not moot at all because, as evidenced by the request for evidence that Venequip filed in its motion for judicial notice, Venequip still anticipates and reasonably contemplates litigation. And that's necessarily so because a request for evidence under Civil Procedure Code 158 in Switzerland is necessarily in connection with an anticipated proceeding. It is prior to the proceeding, but it is necessarily in anticipation. But the contours of the proceeding may change because the original foreign proceeding has terminated. It doesn't exist anymore. And the District Court's decision in this case is key to the contours of that original proceeding, which has concluded. You'd have to start, as I understand the law, you'd have to start a new proceeding after this request for evidence is adjudicated. That is correct. But the proceeding would be the same, and that is articulated fairly straightforwardly in the request for evidence, right? The request for evidence required Venequip to articulate what claims it anticipated, and those claims are the same as those that were presented in the statement of claim. But the intel factors are qualitative, depending on what's going on in the foreign proceeding. And what we have now is no foreign proceeding in existence yet. There's this preliminary request for evidence in advance of the initiation of the proceeding or reinitiation of a new proceeding. And that may change the dimensions of a 1782 request and the weighing of the intel factors depending on what's going on in Geneva, right? So respectfully, Your Honor, we don't think it will change the weighing, and in particular it doesn't change the fundamental errors that the District Court made because those weren't dependent on an exercise of discretion. I'm talking about the question of moodness here, not the merits. So, Your Honor, for something to be moot, it would have to be impossible for this court to grant relief. It's not impossible for this court to grant relief. In fact, if the court does as we submit it should, reverse the District Court, that would provide Venequip with the evidence it needs to move forward. In addition, the proceedings in Switzerland are reasonably contemplated, and that's really all that the Supreme Court said was required for the statutory factors. Reasonably contemplated. And again, that's necessarily so under Swiss law. I would also note that Venequip has, excuse me, Apelli Caterpillar has noted in its, you know, in its, I suppose, opposition or response to Venequip's motion for judicial notice that even in its view, the facts haven't changed. So the case is certainly not moot because it's capable of this court providing the relief that Venequip so desperately needs. And Ms. Trini, forgive me, but help me with this. What impact as a practical matter might the discovery requests that you have filed in the Swiss proceeding have upon the scope of discovery that you're seeking in the United States? So, Your Honor, there are some distinctions between the scope of discovery that Venequip is seeking in Switzerland currently and the scope of discovery it's seeking in its application under 1782. So there are some things that Venequip is seeking from Caterpillar, a third party, that even if the Swiss requests were granted, it would, Venequip would not obtain and would still need to relief through 1782. Can you tell us to what extent your United States discovery application is seeking to obtain testimony that you might in turn seek to introduce in the Swiss proceeding, as opposed to just trying to identify witnesses with relevant information? What you might say, if called to testify in the Swiss proceeding, look, as you might guess, I'm trying to get at the concern that the Swiss court expressed about the manner in which American deposition testimony was taken and to what extent that concern might or might not be implicated by your discovery application here. Right. So I would answer that twofold. One, the Venequip's application seeks documents located in the United States from Caterpillar that it doesn't seek in its request for evidence. So that delta includes actual business records. But as to testimony, the Swiss court in the, I believe that your honor is referring to an appellate case in Switzerland, actually accepted that evidence. And in fact, Caterpillar's own expert, though not in this case, in a recent case in the Southern District of New York, opined directly contrary to what he opined in the court below, that testimony obtained in the United States through 1782 is actually entirely permissible and can be used in Swiss courts. It's used as evidence rather than as testimony, your honor. Well, section 1782 indicates that the US court can order that testimony to be taken in accord with the rules and whatever procedures of the foreign tribunal. If there is a concern about the Swiss courts being receptive, let's say, to testimony that was taken here in the United States, do you agree that this could be addressed by imposing certain limitations on how the witness's testimony might be taken? Yes, your honor. Absolutely. And courts have repeatedly encouraged district courts where there is some concern about receptivity, about the nature of the evidence, rather than deny the application as the district court did here to fashion a remedy. The district court's error was to rely almost dispositively on the third intel factor to deny relief wholesale, relying in lesser extent, for example, to the scope of the discovery, even though this court in Colzer directed the remedy for that, for apparent overbreath, is to selectively grant or to tailor the discovery. The district court failed to do that here and instead denied it outright. How do you get that that's a legal error on our abuse of discretion review when in that Colzer case, the factors preceding the factor that you're talking about were analyzed differently? So by the time the appellate court got to that particular factor, they fashioned this remedy where the court would just narrow the discovery request. But that's not the case here, where the district court weighed the factors differently and indeed did so in a way that the district courts have been invited to do. And so where is the legal error there? For example, with foreign selection, we have instructed courts to watch out for foreign selection causes and to take them into account. How was it an abuse of discretion for the district court to do that? So, Your Honor, it was an abuse of discretion because it relied on a factor that Congress didn't intend to be given dispositive weight. Respectfully, we think the district court gave dispositive or near-dispositive weight to the existence of a forum selection clause between Vannekeep and the Swiss affiliate, not Caterpillar, Inc. And that's something that's present in almost every contract dispute. And so if you take the district court's reasoning, which gave outsized importance to just that clause without an analysis of the actual text of it, and said that's enough to be a restriction. Now, that might be a different case if the district court had correctly identified an actual Swiss restriction that prohibited the use of Section 1782 in connection with its proceedings. But it didn't do that. It really just said, Swiss discovery is different. It's not robust. And therefore, because of this clause, which it didn't really analyze, that precludes relief. If that were taken to its logical conclusion, that would preclude Section 1782 relief in a whole wide swath of commercial disputes, which can't be what Congress intended when it enacted 1782 and then continued to liberalize it over the years. The district court in its analysis said, well, a sophisticated party would know that Swiss discovery was less robust. But respectfully, a sophisticated party, like Caterpillar, Inc., would know that Swiss courts allow the use of Section 1782. That the predominant view in the United States is that Section 1782 is available in cases of foreign selection. And of course, I've routinely acknowledged that notwithstanding foreign selection clause in the context of an enforcement proceeding, that Section 1782 is still available. And with that, Your Honor, I think I will reserve the remainder of my time. Thank you. Mr. Peterson. Thank you, Your Honors. And good morning, and may it please the Court. Jordan Peterson on behalf of Caterpillar, Inc. I'd like to begin, Chief Judge, with your question concerning mootness. I think Caterpillar does have concerns about the mootness of the issue here, given that one of the factors that the district court had to make a finding on was the jurisdictional element of whether this was for use in a foreign proceeding. And while appellants state the standard correctly, that it's a question of reasonably contemplated proceedings, that's a question of fact that the district court didn't have to make a finding about, because the district court was told that there was a pending Swiss proceeding that is now no longer pending. And so while we agree that we think this court could probably affirm by looking at that fact and by looking at the facts that the district court relied on under intel, we do think there is really a question here of mootness that the court would have to address first, which is whether this court can, in the first instance, find that it was reasonably contemplated without the district court having made that finding. Is that a question of mootness or just the scope of our review? It would be both, because it's a scope of review question about a jurisdictional fact that the court below must have found. And so it's both a question of, can this court make the fact finding that's needed to establish jurisdiction? And it would stand to reason that's why we have this motion for judicial notice before us, right? That's right. And that's a fact that I don't think either side disputes this court can take notice of, is that the statement of claim was never filed in the Swiss action. So that action effectively ended. And that instead, a request for evidence was filed in Swiss courts, which starts a brand new proceeding that's not actually an extension of the prior proceeding. So what's the answer to the question of jurisdictional fact? Is there a pending or impending proceeding, or is there not? We think that that's a question that the district court would have to answer first. But there is a challenge here, because what Venikeep has asked to say is, if we don't get discovery here, which the district court didn't allow, and we don't get discovery in the Swiss courts, which is a question that they'll sort out, we can't proceed. So it's a question that we can't actually answer, I think, sitting here today of whether there is a pending action below, because Venikeep has told us, we don't know if the action will proceed depending on the outcome of these two evidentiary proceedings, one in the US, one in Switzerland. So what are you asking us to do? If I can just cut to the chase. I appreciate it. Dismiss the appeal as moot, remand for findings of jurisdictional facts. There's a strong argument here that the appeal is moot, because there is no jurisdictional fact that's been found that there is a pending dispute. I don't see how you argue that, given that you're not contesting their motion for judicial notice. You're conceding that they have a pending request for evidence, which marks a reasonably probable new suit in Switzerland. You're not contesting that. So are you saying two different things? What we're not contesting is that the court can take notice that that proceeding has been filed. But what Venikeep has told this court is that if it affirms the district court's denial of the 1782 application, and the Swiss court decides that that request for evidence proceeding is also not granted and denied, that it can't move forward with its Swiss litigation. And in that instance— Forgive me. But the statute talks about a foreign proceeding that is contemplated. It doesn't even have to be pending yet, seems to me. At most, I think, this would be a question for the district court to address on a remand. And that also would be a reasonable outcome as well, because it would allow the district court in the first instance to address the jurisdictional question and make a fact finding either way. Right. Could I talk to you about the Intel decision for a minute? Certainly, Your Honor. Thank you. Well, the Intel decision says, let's see, that a court can consider the extent to which an applicant may be seeking to circumvent foreign proof-gathering restrictions. But that has to mean something more than the fact that the requested discovery wouldn't be available in the foreign jurisdiction. Because otherwise, it would swallow Intel's primary holding that there's no requirement that the evidence sought would be discoverable in the foreign proceeding. What's unique about the facts of the case here is that that was not the only finding that the district court made. What the district court said is, when you look at Intel, and Intel says, we have to think about whether this is an attempt to circumvent the foreign proof-gathering restrictions, the district court said, following the Colzer case from this circuit, one of the things we have to look at is the forum selection clause. And what's interesting about the forum selection clause, in this case in particular, is that it seems to be an end run using corporate privity to get at the same discovery that they would eventually ask the Swiss court for. In particular, the definition in the subpoena that they've issued to Caterpillar Incorporated explicitly calls for discovery from subsidiaries and affiliates, which would include Kat Sarl, the Swiss entity. And so what's happening here is, and I think this runs through the district court's opinion, is that the district court says what they started with is an ex-ante agreement that this would take place in Switzerland with the Swiss rules and the Swiss procedure and Swiss discovery. And when it got time to file suit, they turned and said, OK, we don't like that anymore. We don't like the restrictions in Switzerland. So we are going to go look for a U.S. subsidiary and seek to use the corporate privity to go after that U.S. subsidiary for the same discovery that experts on both sides agree is too early to get in Switzerland and might be circumvented and might be circumscribed in terms of what it can get in Switzerland. And so that's... Yeah, I'm afraid... Help me. I'm afraid that what you're doing is ignoring the central premise of both Intel and Herias, and that is that Section 1782 authorizes appropriate discovery in the United States that wouldn't be available in the foreign proceeding itself. I mean, parties can agree to litigate in a particular forum, say Germany, and can even anticipate that the specified forum will rule on discovery disputes without surrendering their statutory right under 1782 to pursue appropriate discovery in aid of their litigation in that chosen forum. So, I mean, in Herias, of course, the court said that Herias is entitled to discovery that the German courts themselves wouldn't authorize. Well, you know, why then should we treat a forum selection clause that says nothing about whether parties may seek discovery in the U.S. in aid of litigation in their chosen forum as foreclosing discovery that Section 1782 otherwise authorized? I think the difference here is that Section 1782 and Intel and Herias calls are interpreting that, instruct the district court to be on the lookout for abuse of the 1782 process. And that's why the statute is discretionary for the district court and why this court reviews for abuse of discretion. And so here, the forum selection clause, we disagree that it was dispositive. We agree, like Herias calls it, that it was a flag for the district court to look at when thinking about whether this is abuse or whether the motivation is to abuse 1782. And so what happens? For all we know, sophisticated parties might well contemplate that by agreeing to litigate their disputes in a foreign country, they nonetheless retain their rights to petition for discovery in the U.S. under 1782. And if they wish to close off that particular avenue of discovery, they can say so. And, you know, I don't see, unless the foreign jurisdiction somehow limits the party's abilities to take discovery related to their dispute elsewhere, I don't know why we should be reading a forum selection clause as foreclosing their ability to invoke Section 1782. I think here, I guess, two points to respond to that. One is that the forum selection clause in this case is very broad and could be read broadly enough to certainly cover discovery disputes between Venikeep and the Swiss Caterpillar entity. And so then when the district court looks at that and looks at Venikeep coming to the United States to ask Caterpillar Incorporated for the discovery that really is going after discovery that's available to Kat Sarl, which the district court found was emphasized by Caterpillar Incorporated's undertaking an agreement to make discovery available in the Swiss action should the Swiss court order it, that's when the district court starts to see abuse. And so it's not sort of one factor in isolation. It's not just a forum selection clause. It's not just the difference in discovery between the two systems. It's sort of all of these factors together, which is exactly what Intel says, is Intel uses the word suggestions in the decision to say what the district court should look at and says these four factors aren't even exclusive. Well, I yeah. But may I just finish? Thank you. But look, in Hurrius, the Hurrius chose Germany as a forum for its suit, no doubt, of course, because it was a German corporation and that was its own term. So we could have said in Hurrius, look, you chose Germany where you knew you couldn't get this discovery. Why should we help you out? But we didn't say that. We said the company was entitled to discovery. And I don't I'm trying to figure out why there should be a different result here. Well, Hurrius didn't actually involve a forum selection clause. So a big difference between this case and that case is Venikeep didn't lose a race to the courthouse and end up in Switzerland because Caterpillar's Swiss entity forced it there, right? It agreed ex ante to be in a jurisdiction that had different discovery rules and now has decided that it doesn't like those discovery rules and so comes to the U.S. and looks for a corporate affiliate and asks that corporate affiliate for discovery that includes the discovery from the very Swiss entity that's in the litigation in Switzerland. Look, even if we agree and we construe the forum selection clause as having agreed to have a Swiss court manage discovery, why should we read the clauses foreclosing resort to American discovery under 1782? Why shouldn't we assume that the parties would expect that 1782 would be available to him as it would be to any other litigant in a foreign tribunal? What is it here that's so unusual? I think the parties wouldn't have expected that they would go and find corporate affiliates. Corporate affiliates who, by the way, have agreed to make discovery available in Switzerland as ordered by the Swiss court and then seek the discovery from those affiliates. The parties to the contract expected that the litigation would be centered in Switzerland. And I think that's a distinguishing factor here is that Wenneke through 1782 has used that as an end run around its own ex-ante agreement. And that's the sort of abuse that Reyes-Kulzer tells this court to look out for and tells district courts to look out for is parties making end runs around those forum selection clauses. But the Swiss court, correct me if I'm wrong, has no power to order Caterpillar to turn over discovery in the Swiss proceeding. That's precisely why Wenneke is asking the American courts to enforce some discovery against Caterpillar. The Swiss court, by nature of that proceeding or the anticipated proceeding, only has power over the Swiss subsidiary. And if it orders the Swiss subsidiary to produce discovery that's in possession of Caterpillar Incorporated, that was the important thing that Caterpillar said to the district court is we'll provide that discovery. And I think the district court rightly said if Caterpillar honors its word, then that matters. If Caterpillar goes back on its agreement, then Wenneke will be in a different spot when it comes back to the district court and says Caterpillar has now decided that they're not going to cooperate. So I think what the facts on the ground were for the district court are if Caterpillar Incorporated is willing to give to its Swiss subsidiary the discovery that the Swiss court orders, even if it's in the possession of Caterpillar Inc., then that solves that issue. So it's no longer that the Swiss court couldn't reach it. I think one point I'd like to make briefly as I wrap up, and that's the policy argument that Wenneke makes, which is that business contracts all the time have foreign selection clauses. And so if these clauses are somehow considered relevant in the calculus, we're going to have a real problem. And I think that concern is overblown. And part of that is shown by the Supreme Court's recent decision this last term in the ZF automotive case. And there the court read one of the most common foreign selection clauses, an arbitration clause, to say that 1782 doesn't reach that. And importantly, in the course of reaching that decision, the Supreme Court said the animating purpose of 1782 is comedy. And I think the district court here understood that by recognizing that if you allow a Swiss entity who agreed to be in Switzerland to full-scale import American pretrial discovery by just finding a corporate affiliate, that that upsets the comedy balance. Thank you. Thank you. Ms. Freeny. Your Honors, my friend on the other side mentioned that this was a case about abuse. There is no evidence of abuse.  He's asking this court to find some form of abuse that the district court didn't even find. This is a straightforward case in which two parties agreed to a foreign selection, understanding that the broad leeway that Swiss process and procedure and practice affords the litigants to develop evidence in their own way, including through 1782, would still be available. That, we submit, is not at all abuse. And again, there may be situations. We're not saying that there would never be a situation where a foreign selection clause could be a compelling reason to deny relief. But this is simply not one of those cases. I don't think there was any suggestion. I agree in the district court's opinion that there's abuse going on here. But the court was engaged in a holistic analysis of whether this request suggests an attempt to get around limitations on discovery in the chosen form that the parties agreed to, together with the court's consideration of whether the requests are unduly intrusive or burdensome, which is the last intel factors. And those two factors, it seems to me, were largely decisive here. And those are the two factors that were decisive in Colzer and that this court found to be legal error. Now, on the issue of the scope of the discovery, Venikeep tried to meet and confer with Caterpillar ankle multiplications, and Caterpillar declined to do so. And so it shouldn't be now heard to say this request should be denied on that basis. The other issue in terms of scope that I wanted to address, Your Honors, is what my friend raised about corporate privity, suggesting that somehow the reason that Venikeep was seeking through a backdoor to obtain evidence in possession of Kat Sarle, there's no evidence in the record of that, and it's far from true. And in any event, that would be an issue of scope that could easily be addressed through the district court. It's an issue that Caterpillar Inc. did not raise in the court below, so we had no opportunity to address it. But to be clear, Venikeep's application seeks information that is in possession of Caterpillar Inc., including a key database that is located in the United States that has sales data that is directly probative of Venikeep's claims. And what's your answer to their response that, well, they want you to just wait for the Swiss court to order Kat Sarle to get the information from Caterpillar? So my response is twofold, Your Honor. First, that's simply not required. The statute does not require exhaustion, nor does it require discoverability. Second, it's far from clear that Venikeep will, in fact, obtain the evidence from a Swiss court. What's wrong with waiting? Well, the first thing that's wrong with waiting, Your Honor, is that Congress did not require that. Well, no one's suggesting it's required. This is an abuse of discretion review, and the district court, it seems to me, was taking a very reasonable position that before authorizing this extremely broad discovery, you know, with virtually no limitations, anything and everything that you've got that relates to this dispute, basically, you know, the typical American-style discovery request, not even key to the proportionality requirement that's now in Rule 26. And the judge said, no, we're going to pump the brakes a little bit and wait and see what happens in Switzerland. Come back if you need more. And tell me in a more surgically focused way. I think that's the word that he used. What you want and cannot get in the Swiss proceeding. That's a perfectly rational exercise of discretion, it seems to me. So we would submit that that is in conflict with what the court said in Colzer. But it also just doesn't make sense that, in some sense, it is necessary to propound broader discovery when you don't know what's in the client's files. And Venneke tried, again, several times to confer to try to scope things down. And Caterpillar declined. But ultimately, what the court relied on, I would say almost dispositively, was this forum selection clause. And that was we submit error. It wasn't dispositive. It was important, but not solely dispositive. There was a lengthy analysis of the breadth and depth of these requests and whether they were unduly intrusive and some discussion of whether this is an effort to circumvent limitations on Swiss discovery. So it wasn't ultimately a foreign discovery, discoverability requirement that would have obviously conflicted flatly with Intel. But it wasn't whenever there's a ruling that whenever there's a forum selection clause, you lose. You can't get discovery under 1782. That's not what was going on here. Your Honor, we submit that is the logical extension. It's particularly because the third factor was the only factor that the court definitively weighed against relief. And we submit that's error. And for those reasons, we request that the court reverse the district law. Thank you very much. Our thanks to all counsel. The case is taken under advisement.